```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
                                                        :
LOUIS ALMODOVAR,                                        :
                                                        :
                                    Plaintiff,          :
                                                        :
                    v.                                  :
                                                        :
NYC CANDY STORE SHOP CORP. and                          :
AZOIC ASSOCIATES LLC,                                   :
                                                        :
                                    Defendants.         :
                                                        :
------------------------------------------------------- X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: July 5, 2017

16 Civ. 3795 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

Before the Court is Plaintiff Louis Almodovar's motion for sanctions against Defendant Azoic Associates LLC ("Azoic") and counsel for Azoic ("Defense Counsel"), pursuant to 28 U.S.C. § 1927 and the Court's inherent power. Specifically, Plaintiff seeks sanctions in the nature of an award of attorney's fees to Plaintiff's counsel in the sum of $2,500. For the reasons that follow, Plaintiff's motion is denied.

## BACKGROUND

Plaintiff filed the Complaint in this matter on May 20, 2016, alleging that Defendants Azoic and NYC Candy Store Shop Corp. ("NYC Candy Store") violated, *inter alia*, the Americans with Disabilities Act, 42 U.S.C. §§ 12181- 12189, and its implementing regulations. (Dkt. #1). NYC Candy Store and Azoic filed their Answers and Counterclaims on June 29, 2016 (Dkt. #8), and August 23, 2016 (Dkt. #16), respectively. The Court held an Initial Pretrial Conference on August 24, 2016, and entered a Case Management Plan and

Scheduling Order on the following day. (Dkt. #19). Under that Order, the deadline for the completion of fact discovery was January 5, 2017, and a close-of-discovery Pretrial Conference was set for January 12, 2017. (*Id.*). In the days preceding the conference, the Court contacted Plaintiff's counsel about certain required pre-conference submissions that were outstanding. (*See* Feb. 2, 2017 Conf. Tr. (Dkt. #26) at 4:4-6, 12:6-8). It was only then that Plaintiff's counsel informed the Court that the reason for the missed deadline was that this case had long since been resolved by the parties. (*Id.*). Accordingly, on January 10, 2017, the Court issued an Order of Discontinuance. (Dkt. #21).

On January 19, 2017, Plaintiff requested that the action be restored pursuant to the Order of Discontinuance and scheduled for further proceedings because "Azoic ... never executed the settlement agreement" and "NYC Candy Store has failed to comply with the terms of the settlement agreement, which it signed." (Dkt. #22). Accordingly, the Court issued on the same day an order reopening this matter and setting a status conference for February 2, 2017. (Dkt. #23).

At that conference, Plaintiff's counsel informed the Court that a settlement agreement had been circulated among all three parties but that only NYC Candy Store had signed the agreement and forwarded payment (Feb. 2, 2017 Conf. Tr. at 3:18-20); Plaintiff's counsel also described his unsuccessful efforts to communicate with Defense Counsel, who apparently did not return his calls (*id.* at 4:9-14, 6:17-22). The parties discussed the installation by NYC Candy Store of an ADA-compliant ramp (*id.* at 10:24-11:11), and Defense

Counsel committed to having his client sign the settlement agreement by February 10, 2017 (*id.* at 11:15-17).  Finally, Plaintiff's counsel raised the possibility of "mak[ing] an application to the Court for legal fees ... based upon the actions that took place after the settlement agreement was drafted and the terms agreed to." (*Id.* at 12:4-13:4).  There was some indication, as well, from Plaintiff's counsel and Defense Counsel that the parties' dispute over additional legal fees could upend finalization of the settlement agreement.  (*See id.* at 12-13).  However, Plaintiff's counsel did not suggest a forthcoming application for sanctions or disciplinary measures at this conference.  (*See generally id.*).

On February 10, 2017, Plaintiff filed a joint status letter requesting an extension of the deadline for Azoic both to sign the settlement agreement and to pay Plaintiff the additional legal fees previously sought.  (Dkt. #24).  Plaintiff requested that "in the event of a default in delivering those items ... the Court permit [Plaintiff] to file a letter motion for sanctions and costs, including reasonable attorney's fees." (*Id.*).  The Court granted the application and extended Azoic's deadline to February 21, 2017.  (Dkt. #25).

On February 23, 2017, Plaintiff filed the instant letter motion for sanctions (Dkt. #28) and supporting brief and declaration ("Pl. Br." (Dkt. #29)).  On March 14, 2017, Defense Counsel filed his opposition letter brief ("Def. Opp." (Dkt. #31)) on behalf of himself and his client.  Thereafter, on April 7, 2017, Defense Counsel filed a status report that included the following explanation:

> As of this writing my firm is still waiting on our client to
> sign the final stipulation of settlement.  There have been

3

> billing issues between my firm and the client unrelated to this matter which remain unresolved and which have contributed to my client's on-going refusal to sign the final stipulation of settlement. [Defense Counsel's supervisor] is aware of this, and he is going to reach out to the client directly next week regarding the matter. My client has previously stated that his signature would be forthcoming, only for the issue to remain unresolved.

(Dkt. #32). The letter also noted Defense Counsel's opposition to Plaintiff's sanctions motion, highlighting that Plaintiff's counsel's fees pursuant to the ADA had already been paid. (*Id.*; *see also* Feb. 2, 2017 Conf. Tr. at 4:20-25). Defense Counsel concluded, "Again, I apologize to the Court for the delay in closing out this matter. I hope that it will be resolved shortly." (*Id.*). Consequently the Court issued an order on April 10, 2017, directing the parties either to file a fully executed settlement agreement by April 21, 2017, or else appear for a conference on April 24, 2017, to discuss, *inter alia*, Plaintiff's pending motion for sanctions; the presence of Defense Counsel's client contact at Azoic was also ordered. (Dkt. #34).

On April 21, 2017, the parties filed a fully executed consent stipulation settling this matter, in which Defendants agreed, *inter alia*, to certain remedial measures and to pay monetary compensation in resolution of all claims. (Dkt. #35). The parties also agreed to bear their own attorneys' fees and costs in connection with this action that were not otherwise encompassed by the settlement agreement. (*Id.*). On April 24, 2017, the Court "so-ordered" the stipulation and adjourned *sine die* the conference of the same day. (Dkt. #36). The Court did not close the case in light of the instant motion for sanctions.

4

**DISCUSSION**

Section 1927 provides in relevant part that "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The imposition of sanctions under § 1927 is appropriate only "when there is a finding of conduct constituting or akin to bad faith." *Sakon* v. *Andreo*, 119 F.3d 109, 114 (2d Cir. 1997). Before reaching such a conclusion, a court "must find clear evidence that [i] the offending party's claims were entirely meritless and [ii] the party acted for improper purposes." *Revson* v. *Cinque & Cinque P.C.*, 221 F.3d 71, 79 (2d Cir. 2000).

Similarly, "[i]n order to impose sanctions pursuant to its inherent power, a district court must find that: [i] the challenged claim was without a colorable basis and [ii] the claim was brought in bad faith, *i.e.*, motivated by improper purposes such as harassment or delay." *Enmon* v. *Prospect Capital Corp.*, 675 F.3d 138, 143 (2d Cir. 2012) (internal quotation marks omitted). "When a district court invokes its inherent power to impose attorney's fees or to punish behavior by an attorney in 'the actions that led to the lawsuit ... [or] conduct of the litigation,' which actions are taken on behalf of a client, the district court must make an explicit finding of bad faith." *United States* v. *Seltzer*, 227 F.3d 36, 41-42 (2d Cir. 2000) (quoting *Hall* v. *Cole*, 412 U.S. 1, 15 (1973)).[1]

---

[1] The Court recognizes that "when the district court invokes its inherent power to sanction misconduct by an attorney that involves that attorney's violation of a court order or other misconduct that is not undertaken for the client's benefit, the district court *need not find bad faith* before imposing a sanction under its inherent power."

5

The Second Circuit has "declined to uphold awards [of attorneys' fees] under the bad-faith exception absent both clear evidence that the challenged actions are entirely without color and are taken for reasons of harassment or delay or for other improper purposes and a high degree of specificity in the factual findings of the lower courts." *Wilson* v. *Citigroup, N.A.*, 702 F.3d 720, 724 (2d Cir. 2012) (internal quotation marks and citations omitted); *see also Milltex Indus. Corp.* v. *Jacquard Lace Co.*, 55 F.3d 34, 39-40 (2d Cir. 1995) (reversing sanction because attorney's actions in representing client were neither "entirely without color [of legal legitimacy]" nor undertaken with "improper purposes").

"[A]n award made under § 1927 must be supported by a finding of bad faith similar to that necessary to invoke the court's inherent power." *Oliveri* v. *Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986). "[T]he only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is ... that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against

---

*United States* v. *Seltzer*, 227 F.3d 36, 42 (2d Cir. 2000) (emphasis added). In *Seltzer*, the Second Circuit held that there had been no allegation that the sanctionable conduct "was undertaken as part of [counsel's] role in representing her client. Rather, both ... charges involve a lawyer's negligent or reckless failure to perform his or her responsibility as an officer of the court. Under circumstances such as these, sanctions may be justified absent a finding of bad faith given the court's inherent power to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 41 (internal citation and quotation marks omitted). Here, the Court considers Defense Counsel's conduct to have been more a result of representing his client than was the attorney's in *Seltzer* and accordingly will seek to identify bad faith; indeed, as will be further discussed below, the Court credits Defense Counsel's representation that the delays here were principally due to a conflict with his client related to billing issues on a different matter.

an attorney, a party, or both." *Enmon*, 675 F.3d at 144 (quoting *Oliveri*, 803 F.2d at 1273) (internal quotation marks omitted).

The Court declines to impose sanctions on Azoic pursuant to the Court's inherent power and likewise declines to impose sanctions on Defense Counsel pursuant to § 1927 or to the Court's inherent power. To be clear, Azoic's and Defense Counsel's conduct in this regard was careless and unacceptable, but Plaintiff has failed to proffer evidence, and the Court can find none on this record, that would be sufficient to make the requisite factual findings with "a high degree of specificity" that such conduct was "entirely without color and … taken for reasons of harassment or delay or for other improper purposes." *Wilson*, 702 F.3d at 724; *see also Revson*, 221 F.3d at 79.

Defense Counsel communicated, albeit belatedly, that the reason for the delays related to unresolved billing issues with Azoic on a different matter. (Dkt. #32). *See Sorenson* v. *Wolfson,* No. 16-1224, 2017 WL 1043073, at *3 (2d Cir. Mar. 16, 2017) (summary order) ("District courts are entitled to examine all 'surrounding circumstances' when making a determination of bad faith." (quoting *Oliveri*, 803 F.2d at 1277)). It would appear, then, that counsel-client discord was the root cause of the delays in this matter. This does not excuse Azoic's or Defense Counsel's behavior, particularly the latter's failure to keep opposing counsel and the Court apprised of his inability to comply with impending deadlines and his failure to seek the Court's leave to extend those deadlines. This is also not to say that the root cause of such delays — a rift between counsel and his client that is only belatedly communicated to the

7

Court — could never support a finding of bad faith. But on this sparse record, the Court does not find clear evidence to support specific factual findings that Azoic's or Defense Counsel's behavior was motivated by improper purposes.

The Court also declines Plaintiff's invitation to impose sanctions because Azoic and Defense Counsel have not been afforded the requisite due process in connection with the instant application. It is well-established that "before the court imposes '*any* kind of sanctions,' it must afford the person to be sanctioned due process, including notice that sanctions may be imposed." *Sakon*, 119 F.3d at 114 (quoting *In re Ames Dep't Stores, Inc.*, 76 F.3d 66, 70 (2d Cir. 1996) (emphasis in original)). "Like other sanctions, attorney's fees certainly should not be assessed lightly or without fair notice and an opportunity for a hearing on the record." *Id.* (quoting *Roadway Express, Inc.* v. *Piper*, 447 U.S. 752, 767 (1980)) (internal quotation marks omitted). Indeed,

> [a person] whom the court proposes to sanction must receive specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, and an opportunity to be heard on that matter, and must be forewarned of the authority under which sanctions are being considered, and given a chance to defend himself against specific charges.

*In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 117 (2d Cir. 2000) (quoting *Sakon*, 119 F.3d at 114) (internal quotation marks omitted); *see also Wilson*, 702 F.3d at 725 (holding that the district court abused its discretion in imposing sanctions without the requisite procedural protections).

Here, Azoic and Defense Counsel have not been afforded the full set of procedural protections envisioned by the Second Circuit. *See Arrowhead*

8

*Capital Fin., Ltd.* v. *Seven Arts Entm't, Inc.*, No. 14 Civ. 6512 (KPF), 2017 WL 1653568, at *1 (S.D.N.Y. May 2, 2017) (reconsidering and withdrawing sanctions imposed "without giving [defense counsel] appropriate notice of its intention and an opportunity to respond"). The Court had intended for the scheduled April 24, 2017 conference to serve as an opportunity for Azoic and Defense Counsel to be provided the requisite notice and chance to be heard (*see* Dkt. #28 ("If the conference is held, the parties will also be prepared to discuss Plaintiff's pending motion for sanctions.")), but that conference was adjourned after execution of the settlement agreement (Dkt. #36), and another conference never requested. Because Azoic and Defense Counsel have received some but not all of the procedural protections to which they are entitled, the Court declines to exercise its discretion to impose sanctions.

Finally, it should be noted that while Azoic and Defense Counsel unquestionably shoulder much of the blame for "needlessly prolonging the instant litigation" (Pl. Br. 1), they do not shoulder it alone; Plaintiff and co-Defendant NYC Candy Store each contributed to that delay as well. To review briefly, the Court entered a discovery schedule in August 2016 and set a post-fact discovery conference for January 2017. (Dkt. #19). According to Plaintiff, a settlement in principle was reached in September 2016. (*See, e.g.,* Pl. Br. 1). But the Court was never made aware of this fact. This matter remained active on the Court's docket for three additional months until January 2017 when *the Court* initiated contact with Plaintiff's counsel regarding the approaching post-discovery conference. It was only then that Plaintiff's counsel notified the

9

Court that a settlement had been reached months earlier and requested that an Order of Discontinuance be issued. (*See* Dkt. #21). Just over a week later, Plaintiff sought the restoration of this matter because "Azoic … never executed the settlement agreement" and "NYC Candy Store has failed to comply with the terms of the settlement agreement, which it signed." (Dkt. #22). Put differently, for months Plaintiff failed to inform the Court that he had settled this matter or, alternatively, that Azoic had not yet executed the settlement agreement. And although Plaintiff and NYC Candy Store's dispute over settlement was eventually resolved, one of the proffered grounds for Plaintiff's application to restore the matter was NYC Candy Store's failure to comply with the settlement agreement. (*See id.*). Had each of the parties in this matter fulfilled their respective responsibilities, this action, including the issue of Azoic's execution of the settlement agreement, could have been addressed and resolved months earlier.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for sanctions is DENIED. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated: July 5, 2017
New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge